WISCONSIN ELECTRIC RAILWAY HISTORICAL SOCIETY, INC., a Wisconsin Non-Profit Corporation, Plaintiff,

v.

VILLAGE OF EAST TROY, WISCONSIN, a Municipal Corporation, Defendant.

No. 86–C–267.

United States District Court, E.D. Wisconsin.

April 23, 1987.

C. James Riester, Schroeder, Riester, Merlin & Smith, S.C., Milwaukee, Wis., for plaintiff.

Harry Southhoff, Jr., Thurow, Southhoff & Alexander, Madison, Wis., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

The Wisconsin Electric Railway Historical Society, Inc. is suing the Village of East Troy, Wisconsin for depriving it of civil rights protected by the Fifth and Fourteenth Amendments to the United States Constitution. *See* 42 U.S.C. § 1983. The plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 & 1343.

The Society, which is in the business of operating an electric railway museum, claims that on January 23, 1985, the defendants' agents and employees removed various equipment from a premises rented by the plaintiff. The equipment included six rectifiers, connecting conduit and wires, switches, meters and control equipment. The Society says that this equipment, which it values at $97,629.00, was taken without just compensation. It seeks compensatory and punitive damages for this "taking."

The defendant answered and, after the completion of the discovery of fact witnesses, moved for summary judgment on the grounds that there are no issues of disputed fact and that it is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56. The plaintiff has not responded and its time to respond has now passed, so its right to respond is deemed waived. *See* Local Rule 6, § 6.01.

## I. FACTS

In their joint settlement report the parties recounted the following background of this case:

Plaintiff, Wisconsin Electric Railway Historical Society, Inc. (Society) is a nonprofit, non-stock corporation chartered under the laws of the State of Wisconsin and is recognized by the Internal Revenue Service as a tax exempt organization.

The Society charter was granted by the Secretary of State of the State of Wisconsin on June 16, 1967. The purposes of this Society as set forth in Article 3 of the Articles of Incorporation are "To maintain and operate a museum and historical organization perpetuating the memory and history of electric railroading including people, equipment and geographical locations therein involved, and to engage in, assist and endow such literary and educational activities and undertackings (sic) as will aid and abet in preservation said memory and history".

From 1972 to June of 1984, the Society operated a museum and offered to the public rides on its electrical railway equipment under the style name of the East Troy Trolley Museum pursuant to license agreements with the Defendant, Village of East Troy, Wisconsin (Village).

In June of 1984 at a special meeting of the Village Board, the then existing License Agreement with the Society was terminated.

In September of 1984, the Village commenced legal action against the Society seeking to recover approximately $12,-000.00 for past due revenues and monies it had advanced to the Society. The action was filed in the Circuit Court of Walworth County, Wisconsin, identified as Case # 84CV00630.

The Society, in addition to operating a museum at East Troy, Wisconsin on property known as the Sub Station, stored its equipment at the property known as the "Phantom Woods Yard" located in the Township of East Troy. Located at this site were six rectifiers and ancillary equipment that the Society had been given or purchased to be used to provide a power source to operate its electrical railway equipment on the railroad right of way owned by the Village.

The rectifiers and related equipment were installed in 1981 pursuant to an Agreement wherein the Society and Village agreed to share the installation expenses. The Village initially paid the entire expenses of installation and the Society agreed to pay for its share from its operating revenues. At the end of 1981, the amount owing by the Society to the Village was $12,863.72 of which $3,384.28 was its share of the installation expenses previously mentioned.

In June of 1982, the Village planned to construct additional rail facilities and agreed to accept materials it needed from the Society for such construction in exchange for the entire debt.

While the action in Walworth County was pending, the Village, on January 23, 1985 went upon the property the Society was using at the Phantom Woods Yard and removed the rectifiers. The Village claims ownership to the rectifiers pursuant to the last License Agreement.

The action pending in the Circuit Court of Walworth County was scheduled for trial on September 10, 1985. About a week prior to the trial date, a settlement was agreed upon and the trial was cancelled. In January of 1986, the parties were not in agreement as to the language to be set forth in the settlement documents and the Village notified the Society that the settlement was cancelled. The action in Walworth County has been reset for trial commencing April 27, 1987.

Joint Settlement Report at 1–3.

## II. LEGAL STANDARDS

In *Celotex v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court explained that a party moving for summary judgment under Federal Rule of Civil Procedure 56 "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 2553. Once the

moving party files such a properly supported motion, the nonmoving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), except merely the pleadings themselves. *Id.* In determining whether a genuine issue of material fact exists, the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence or the credibility of witnesses. *See Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2552–53.

## III. DISCUSSION AND DECISION

The Village of East Troy argues that it is entitled to summary judgment because: (1) it is the legal owner of the rectifiers and ancillary equipment and any "taking" was lawful; and (2) the plaintiff has failed to allege that its "deprivation" was caused by a custom or policy of the Village as required by *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Village points out that in the Seventh Circuit it is well-established that "a plaintiff wishing to assert ... [a local governmental liability claim under section 1983] must plead facts tending to show a pattern of illegal conduct going beyond a single incident of wrongdoing." *Rodgers v. Lincoln Towing Service, Inc.*, 596 F.Supp. 13, 20 (N.D.Ill.1984), *aff'd*, 771 F.2d 194 (7th Cir. 1985).

■ As the Village has pointed out, municipal liability may only be imposed for unconstitutional actions that are inflicted pursuant to a governmental "policy or custom." *Monell v. New York Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). More-

**1270**

over, the Supreme Court has indicated that, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). The Supreme Court has also suggested that the word "policy" implies "a deliberate choice to follow a course of action." *Pembauer v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

■ The Wisconsin Electric Railway Historical Society's complaint contains no allegation that the Village acted pursuant to any established policy, practice or custom. Likewise, there is no evidence that the "taking" was carried out due to the deliberate choice of a municipal policymaker. In short, the plaintiff failed to make a showing sufficient to establish the existence of an "unconstitutional policy." Proving that the Village acted pursuant to a policy or custom is an essential element of the plaintiff's case and it is an element on which the plaintiff would bear the burden of proof at trial. In this case the plaintiff has failed to meet its burden.[1]

Consequently, the court ORDERS that the defendant's Motion for Summary Judgment (filed April 1, 1987) IS GRANTED as a matter of law. *See* Federal Rule of Civil Procedure 56.

IT IS FURTHER ORDERED that this action IS DISMISSED.

---

1. Because governmental policy issue is dispositive of this case, the court need not reach the issue of the ownership of the equipment.